UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| **EDITH DAUGHERTY** | : | |
| **Plaintiff,** | : | |
| v. | : | |
| | : | Case No. : |
| **UNUM LIFE INSURANCE COMPANY OF AMERICA** | : | |
| 2211 Congress Street<br>Portland, Maine 04122 | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## COMPLAINT

Plaintiff, Edith Daugherty, for her Complaint against the Defendant, Unum Life Insurance Company of America, states as follows:

**Jurisdiction, Venue, and Parties**

1. Plaintiff Edith Daugherty's claims arise from the wrongful termination of her long-term disability ("LTD") benefits under an employee welfare benefit plan; and seeks to recover benefits due Plaintiff under the terms of the plan, to enforce and clarify her rights, for full and fair review, and for other equitable remedies.

2. Plaintiff is a citizen of the State of Kentucky, residing in Boone County, who, at all times relevant to this action, was a participant in the Fisher Scientific International Inc. Health and Welfare Plan (the "Plan"), sponsored by her employer Fisher Scientific International, Inc., in Florence, Kentucky.

3. Defendant, Unum Life Insurance Company of America ("Unum") is an insurance company believed to be domiciled in the state of Maine to whom Fisher Scientific International, Inc. delegated its fiduciary responsibility of making benefit determinations for the Plan and, upon information and belief, acted as Plan Administrator with respect to the LTD benefits. Unum may be served at its offices, located at 2211 Congress Street, Portland, Maine 04122.

4. Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA")§ 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover benefits and to clarify her rights to future benefits under the Plan. The Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), (f) and 28 U.S.C. §1331, and it may assert personal jurisdiction over Defendant because it undertook to insure and administer an ERISA plan that affected participants residing and working in Boone County, Ohio and because the breach of the plan occurred within this judicial district.

## **Claim for Relief**

5. Plaintiff worked at Fisher Scientific Inernational, Inc. ("Fisher") and paid premiums for disability benefits under a group long-term disability plan provided by Fisher to its employees.

6. The Plan is governed by ERISA, 29 U.S.C. § 1001 *et seq.*

7. Plaintiff was a plan participant in and beneficiary under the Plan and entitled to seek benefits thereunder.

8. Upon information and belief, the Plan is funded through an insurance policy issued by Defendant Unum.

9. Unum is the Plan's claims review fiduciary and/or claims administrator with authority to determine eligibility for benefits under the Plan and provided claims administration services and made claim determinations.

10. The Plan provides for the payment of long-term disability benefits to Plan participants who become "disabled" as defined in the Plan.

11. Plaintiff worked as a warehouse worker for Fisher for 14 years, until she had to stop working due to her disabilities of, among other conditions, lumbar and cervical degenerative disc disease, myofascial muscle pain, and spine arthritis in April of 2003 resulting in pain throughout her back, neck, shoulder, lateral legs, and upper extremities.

12. Plaintiff attempted to return to work with restrictions, but Fisher could not accommodate her limitiations on a permanent basis and Plaintiff stopped working again completely in September of 2003.

13. As a result of these and other conditions, Plaintiff became disabled as defined under the Plan on or before her last day of work and has remained continuously disabled under the Plan.

14. Plaintiff made a timely claim for short-term disability benefits under the short-term disability policy sponsored by Fisher and administered by Unum, and Unum approved her claim until her short-term disability benefits were exhausted.

15. Plaintiff made a timely claim for long-term disability beneifits. Unum initially denied Plaintiff's claim for LTD benefits. Plaintiff appealed and Unum had her undergo a Functional Capacity Evaluation (FCE) which supported Plaintiff's claim. Accordingly, Unum approved Plaintiff's claim for LTD benefits under the Plan, finding that she was, and remained, disabled

from performing her own regular occupation under the Plan's definition of disability in effect for the first 24 months of disability.

16. Plaintiff's employment history is limited to unskilled work: she worked at Fisher in a "heavy" duty warehouse occupation for 14 years, and before that as a waitress at a truck stop for 2 years. Plaintiff does not have a highschool degree or a GED.

17. After receiving LTD benefits under the Plan for 24 months, Unum found Plaintiff satisfied the Plan's second definition of disability commencing approximately September 2005, determining that Plainitff was unable to perform the duties of any gainful occupation for which she was reasonably fitted by education, training or experience because, according to Unum's occupational reviews, there were no gainful occupations reasonably available to Plaintiff within her restrictions and limitations.

18. Unum transferred Plaintiff's claim to the "Extended Benefits Center", noting that although Plaintiff could work in a sedentary level, the Plaintiff has "no transferrable skills".

19. Unum continued to monitor Plaintiff's claim for continued benefits, including following up with her medical providers, performing background checks, visiting her in her home, and having her undergo another FCE. Throughout this period Unum continued to find that Plaintiff was disabled under the Plan and paid Plaintiff her monthly LTD benefits.

20. Plaintiff's conditions deteriorated over the years, and Plaintiff obtained no new transferrable skills.

21. In February of 2015, Unum offered Plaintiff a settlement of her LTD claim by offering to pay her a percentage of the present value of her future monthly benefits.

22. Internal claim notes show Unum was authorized to pay Plaintiff up to $135,223, or 80% of its present value calculations of her maximum benefits were she to remain disabled through her normal retirement age of 67 in 2028.

23. In determining whether to offer Plaintiff a settlement, Unum noted that Plaintiff would remain disabled through her normal retirement age, stating that "it appears the claim is appropriate for settlement consideration based on the fact there have been no changes from a medical, vocational, financial and/or contractual perspective that would impact our liability".

24. Plaintiff declined to accept settlement.

25. In 2018, Unum changed its handling of Plaintiff's claim to open a new claim review because, specifically, the claim representative believed the Plaintiff was difficult to talk to in a phone conversation, despite there being no improvement in Plaintiff's medical condition or changes in her transferable skills and despite the Plaintiff indicating that she was in pain during the phone conversation.

26. Unum cited the fact that Plaintiff had not undergone an FCE or IME since 2011 as its basis for reviewing Plaintiff's claim again, but Unum did not request Plaintiff undergo any such IME or FCE and instead chose to surveille Plaintiff in person and online.

27. Two days of surveillance showed the Plaitniff drive approximately five minutes to the doctor, then drive approximately five minutes to the pharmacy, return home, and spend approximately 8 minutes vacuuming of her raised SUV with a hand vacuum which weighs less than approximately 5 pounds.

28. Unum denied Plaintiff's claims for continued benefits by letter dated October 1, 2018. In its denial letter, Unum inaccurately describes Plaintiff's functional abilities, mischaracterizes her

activities observed on surveillance, and inaccurately describes the Plaintiff's medical providers' statements concerning Plaintiff's continued disability.

29. Unum's October 1, 2019 denial letter relied on three occupations the Plaintiff could supposedly perform that Unum had previously ruled out, despite no changes in Plaintiff's education, experience, or background and despite no improvement in the Plaintiff's restrictions and limitations.

30. The vocational analysis Unum performed to identify these occupations was based on an outdated "gainful" wage calculation, the occupations identified would not result in a "gainful" wage for Plaintiff as required under the Plan, would require Plaintiff to perform physical demands in excess of even those physical requirements Unum agreed Plaintiff could not do, Plaintiff is not qualified to perform those occupations and/or they are not reasonably available to Plaintiff.

31. For instance, Unum agreed with Plaintiff's doctors that she could not stand or walk more than "occasionally", or more than 2.5 hours per 8-hour day, but each of the three occupations Unum identified in its denial letter would require the Plaintiff to walk "frequently", or for up to 5.5 hours per day.

32. Plaintiff underwent an FCE on October 16, 2018 and timely submitted the results to appeal Unum's denial of her claim for LTD benefits. The FCE results supported Plaintiff's continued disability, showing that she still could not perform a "light" duty occupation and could only perform at most up to a sedentary level of physicality on a full time basis.

33. Rather than reviewing the FCE independently on appeal, Unum refused to consider Plaintiff's submission as an appeal and gave the FCE report to Dr. Christine Sullivan, the same doctor who reviewed Plaintiff's claim when Unum denied her LTD benefits in October of 2018.

34. Dr. Sullivan mischaracterized the medical records, surveillance reports, and functional demands of occupations identified for Plaintiff and issued misleading statements in her communications with Plaintiff's treating doctors in order to obtain a different response that would support her own conclusions.

35. Unum again denied Plaitiff's appeal, although it refused to treat it as such and required Plaintiff to submit another appeal to Unum, which Plaintiff did by letter dated December 26, 2018.

36. On appeal, Unum withdrew two of the three occupations it previously identified for the Plaintiff but then included another occupation, despite the fact that Unum already ruled out that occupation as unreasonable for Plaintiff and despite the fact that the occupation exceeded Plaintiff's physical abilities as described by Unum.

37. Unum referred Plaintiff's claim to be reviewed by a nurse employed by Unum as opposed to an independant physician with the appropriate training and experience to review Plaintiff's 15 year medical history on appeal.

38. The nurse reviewer's analysis quotes significant portions of Unum's previous reviews as her own, demonstrating a failure to independently consider Plaintiff's claims; relies upon previous inaccurate summaries of the surveillance footage; ignores credible pain complaints which were supported by 15 years of treatment, imaging studies, FCEs, and opoid pain medication prescriptions; and discounts the specific FCE findings documenting Plaintiff's restrictions and limitations based on the generic and insufficient reasons.

39. For instance, Unum discounted the 2018 FCE because the Plaintiff demonstrated "self-limiting behaviors and a high Fear Avoidance Belief Questionairre" without considering that Plaintiff gave full effort, the results of the FCE were found to be reliable by the examiner, and that

the FCE found her symptoms of pain to be consistent with the objective evidence. Unum also discounted the FCE results because the FCE did not allegedly "consider occupations that allowed for changes in position throughout the day", without ever considering whether the two occupations Unum identified could reasonably allow for changes in position throughout the day and without accounting for the other aspects of Plaintiff's restrictions and limitations, including her inability to lift more than 5 pounds from the ground, her inability to lift more than 10 pounds from her waist to her head, her inability to ever carry more than 20 pounds, inability to perform elevated work as required by the occupations identified by Unum, limited ability to bend forward, kneel, sit for more than 2.5 hours.

40. Furthermore, Unum discounted Plaintiff's credibility in terms of her symptoms of pain while ignoring the substantial objective evidence, including analgaic gait, disrupted posture, slow movement charicateristsics, impaired coordination, reduced muscle strength and range of motion, years of imaging reports showing mechanical damage, Plaintiff's treating doctors finding her pain complaints credible, and Unum's 13-year history of finding her unable to perform any occupation under the Plan.

41. Unum again denied Plaintiff's appeal by letter dated February 12, 2019, arbitrarily and caprciously relying on Unum's misleading and confusing communications to Plaintiff's doctor, a dramatically exaggerated summary of Plaintiff's activity level based on two days of surveillance, and disregard for the qualifications and requirements of the two occupations on which Unum based its appeal denial.

42. Unum's denials constitute a breach of its obligations under the Plan and ERISA to pay benefits to Plaintiff, and Plaintiff has exhausted all administrative remedies set forth in the Plan and required by ERISA.

43. This Court should review the decision to terminate Plaintiff's claim for LTD benefits under a *de novo* standard of review because Unum failed to follow applicable ERISA regulations, the Plan's requirements and terms, and its own policies and procedures, and because Plaintiff was denied a full and fair review.

44. Alternatively, the denial of LTD benefits was wrongful, arbitrary, and capricious, and not the product of a deliberate principled reasoning process, including Unum's wrongful disregard of the medical evidence and opinions of Plaintiff's own treating physicians; its failure to consider the Plaintiff's reasonable qualifications to perform a gainful occupation; failure to follow its own policies and procedures; denying Plaintiff a full and fair review; and wrongfully relying on a flawed and biased record for review.

45. Unum's decision to deny Plaintiff's claims was made under a conflict of interest, in that it was deciding whether to expend its own funds to pay the claim, and this conflict of interest must be weighed in the review of Unum's denial of the claim.

46. Plaintiff is entitled to discovery to probe and ascertain the issues of procedural due process and conflict of interest and bias under which Unum reviewed and failed to properly adjudicate Plaintiff's claim for benefits.

47. Plaintiff was and continues to be disabled as defined under the Plans.

48. As a result of the foregoing, Plaintiff has suffered losses in the form of unpaid benefits of at least approximately $1,590 per month from approximately October 1, 2018 and continuing for as long as she remains disabled under the LTD Plan or until her normal retirement age.

49. Plaintiff is entitled to a judgment against Defendant in the amount of the unpaid benefits under the Plan, as well as an order requiring Defendant to pay benefits to her for as long as she

remains disabled under the Plan. Plaintiff is further entitled to prejudgment interest and an award of attorneys' fees under ERISA § 502(g) in an amount to be proven.

WHEREFORE, Plaintiff, Edith Daugherty, requests the Court grant her the following relief from Defendants, Unum Life Insurance Company:

a) a judgment in the amount of all her past-due benefits under the Plan;

b) an order requiring the Defendant to pay her benefits for as long as she remains disabled;

c) her costs and attorney's fees; and

d) all other relief to which she is entitled, including a *de novo* review of the decision to deny the claim.

Dated: August 9, 2019

s/ Claire W. Bushorn Danzl  
Claire W. Bushorn (Ky Bar No.: 94782)  
**THE BUSHORN FIRM, LLC**  
810 Sycamore Street  
Cincinnati, Ohio 45202  
513.827.5771 – phone  
513.725.1148 – fax  
cbushorn@thebushornfirm.com  
*Trial Attorney for Plaintiff*